CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Isabel Rose Masanque, Esq., SBN 292673
8033 Linda Vista Road
Suite 200, San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

**Scott Johnson**,

        Plaintiff,

  v.

**Sweet Spark, Inc.,** a California Corporation;

        Defendant.

**Case:** 2:17-CV-02474-WBS-DB

**Plaintiff's Memorandum of Points and Authorities**

Date:     October 21, 2019
Time:    1:30 p.m.
Ctrm:   5 (14th Floor)

Hon. William B. Shubb

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 1

  I.   PRELIMINARY STATEMENT ...................................................... 1

  II.  RELEVANT FACTS ................................................................... 1

  III.   LEGAL STANDARD ................................................................. 4

  IV.   THE LACK OF ACCESSIBLE FACILITIES ............................ 4

    A.  Plaintiff is Disabled ............................................................ 6

    B.  Defendants Own, Operate, Lease or Lease to a Place of
    Public Accommodation ......................................................... 7

    C.  The Fix Auto Had and Has Architectural Barriers to Access...... 7

    D.  The Barriers Are Readily Achievable to Remove .................... 12

    E.  The Plaintiff Personally Encountered These Violations and
    has been Deterred From Patronage .................................................. 12

V.  THE LACK OF ACCESSIBLE FACILITIES IS UNLAWFUL
UNDER CALIFORNIA LAW ......................................................... 13

  VI.   REMEDIES ............................................................................. 13

  VII.  CONCLUSION ........................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
603 F.3d 666 (9th Cir. 2010)................................................................. 5

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .............................................................................. 4

*Chapman v. Pier 1 Imports (U.S.) Inc.*
631 F.3d 939 (9th Cir. 2011)............................................................. 5, 8

*Cullen v. Netflix, Inc.,*
880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................................ 13

*D'Lil v. Best Western Encina Lodge & Suites,*
538 F.3d 1031 (9th Cir. 2008) ............................................................ 14

*Doran v. 7-Eleven, Inc.,*
524 F.3d 1034 (9th Cir. 2008) ............................................................ 13

*Moeller v. Taco Bell Corp.*
816 F.Supp.2d 831 (N.D. Cal. 2011) .................................................... 5

*Molski v. M.J. Cable, Inc.,*
481 F.3d 724 (9th Cir. 2007)............................................................... 13

*Rush v. Denco Enterprises, Inc.,*
857 F. Supp. 2d 969 (C.D. Cal. 2012) .................................................. 8

**Statutes**

42 U.S.C. § 12102(2)(A) ........................................................................ 7

42 U.S.C. § 12188(a) ............................................................................. 6

42 U.S.C. §§ 12183(a)(2) ................................................................... 5, 6

Cal. Civ. Code § 55.56(a)..................................................................... 14

Cal. Civ. Code § 55.56(b)..................................................................... 14

Cal. Civ. Code § 55.56(e)..................................................................... 14

ii

1

Civ. Code § 51 (f) ................................................................... 13

**Other Authorities**

1991 Standards § 4.1.2(5) ........................................................ 8

1991 Standards § 4.1.2(5)(b) ................................................... 8

2010 Standards § 502.2. .......................................................... 8

28 C.F.R. § 36.304(b) ............................................................ 12

CBC § 1129B.4. ..................................................................... 9

CBC § 11B-502.3.3 .............................................................. 10

Department of Justice, Technical Assistance Manual on the American with

    Disabilities Act (BNA) §§ III-4.4100 (1991) ...................................... 7

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Plaintiff is a quadriplegic who brought this action because Defendant has failed to make its business accessible to persons with disabilities. In this motion, Plaintiff is seeking a ruling that his rights were violated under the Unruh Civil Rights Act, a statutory penalty of $8,000, and an Order requiring Defendant to provide and maintain accessible parking, paths of travel and restrooms, as defined by the Americans with Disabilities Act. Plaintiff respectfully requests this Court grant his motion.

## II.   RELEVANT FACTS

Scott Johnson is a quadriplegic. He cannot walk and uses a wheelchair for mobility. (SUF #1). Mr. Johnson drives a specially equipped van with a lift that deploys from the passenger side of the van to accommodate his wheelchair. He has been issued a Disabled Person Placard by the California Department of Motor Vehicles. (SUF #2).

The Fix Auto Sacramento ('Fix Auto') is located at or about 4220 Stockton Blvd., Sacramento, California. (SUF #3). Defendant currently owns and operates the Fix Auto and the real property on which it is located and did so in March 2017, June 2017, July 2017, August 2017 and September 2017. (SUF #4). The Fix Auto is a facility open to the public, a place of public accommodation, and a business establishment. (SUF #5). Parking spaces are one of the facilities, privileges, and advantages offered by Defendant to patrons of the Fix Auto. (SUF #6). On March 9, 2017 Mr. Johnson went to the Fix Auto to get an estimate for his vehicle. (SUF #7). As Mr. Johnson drove into the parking lot of the Fix Auto, he found that

even though there was signage on the wall indicating a parking space reserved for persons with disabilities, it did not have an access aisle adjacent to the stall for use by persons with disabilities. (SUF #8). There was a faded International Symbol of Accessibility on the surface of the designated accessible parking stall. (SUF #9). However, there were no painted borders clearly outlining the designated accessible parking space. (SUF #10).

Mr. Johnson needs "van accessible" parking with an eight foot access aisle and adequate warning lettering in order to safely deploy his ramp and exit his van. (SUF #11). Because there was no compliant van accessible parking, Mr. Johnson was forced to park in a non-disabled parking space and leave his ramp deployed in order to avoid getting his van blocked by a neighboring car, which would prevent him from re-entering his vehicle. (SUF #12). Because of this, Mr. Johnson was concerned for the security of his van and his belongings while he was inside the Fix Auto. (SUF #13). This caused him difficulty, discomfort and frustration. (SUF #14).

Mr. Johnson returned to the Fix Auto on several other occasions including, on June 5, 2017, July 3, 2017, August 3, 2017, August 24, 2017 and September 7, 2017. However, because of his knowledge of the parking conditions, he was deterred from even attempting to patronize the Fix Auto. (SUF #15). Additionally, during his visits on August 24, 2017 and September 7, 2017, Mr. Johnson saw that vehicles without a Disabled Person Placard or license plate were parked in the designated accessible parking space. (SUF #16).

On October 4, 2017, Evens Louis, an investigator for the plaintiff, conducted an investigation of the Fix Auto. (SUF #17). Mr. Louis found that the off-street parking lot serving the Fix Auto offered approximately

Plaintiff's Motion for Summary Judgment                    Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities

9 parking spaces. (SUF #18). He found that there was a "HANDICAPPED PARKING" sign on the wall in front of one of the parking spaces. That parking space had a faded International Symbol of Accessibility painted on the surface. (SUF #19). There were also remnants of blue paint on the surface of this parking space. However, the paint was badly faded and there were no borders or striping clearly outlining the designated accessible parking space or access aisle. (SUF #20).

Paths of travel are also one of the facilities, privileges, and advantages offered by Defendant to patrons of the Fix Auto. (SUF #21). During his investigation, Mr. Louis also found that the path of travel to the restroom entrance required a person to navigate steps for which there was no ramp. (SUF #22).

Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Fix Auto. (SUF #23). During his investigation, Mr. Louis found that the restroom door hardware at Fix Auto was a traditional style round knob. (SUF #24). The restroom doorway clear passage measured only 28 inches wide. (SUF #25). The rim of the restroom sink was mounted 36 inches above the floor. (SUF #26). The height of the bottom edge of the mirror measured 41 inches above the floor. (SUF #27). There were no grab bars located near the toilet. (SUF #28).

On January 11, 2018, Mr. Louis returned to the Fix Auto for a follow up investigation. (SUF #29). He found that there was now a designated accessible parking space with blue borders and an access aisle. (SUF #30). However, the access aisle lacked the 'NO PARKING' lettering. (SUF #31). Additionally, there was no signage indicating that the designated accessible parking space was "van accessible." (SUF #32).

Plaintiff's Motion for Summary Judgment                    Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities

The parking space of the designated accessible parking space measured eight feet wide and the access aisle measured only five feet wide. (SUF #33).

The Fix Auto is less than 10 miles away from Mr. Johnson's home. Therefore, it is a convenient place for him to take his van for service and repairs. (SUF #34). Once the violations are removed, Mr. Johnson will return and continue to patronize the Fix Auto whenever the need arises. (SUF #35).

Defendant is not raising a readily achievable defense. (SUF #36).

### III.   LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In the present case, there can be no genuine dispute over the facts of the case and those facts inform the Court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the plaintiff's motion.

### IV.   THE LACK OF ACCESSIBLE FACILITIES

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies

4

1  not just to intentional discrimination but to thoughtlessness and

2  indifference:

> Its passage was premised on Congress's finding that
> discrimination against the disabled is most often the product,
> not of invidious animus, but rather of thoughtlessness and
> indifference, of benign neglect, and of apathetic attitudes
> rather than affirmative animus. The concept of
> "discrimination" under the ADA does not extend only to
> obviously exclusionary conduct—such as a sign stating that
> persons with disabilities are unwelcome or an obstacle course
> leading to a Shopping Center's entrance. Rather, the ADA
> proscribes more subtle forms of discrimination—such as
> difficult-to-navigate restrooms and hard-to-open doors—that
> interfere with disabled individuals' "full and equal
> enjoyment" of places of public accommodation.

11  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir.

12  2011) (internal quotes and citations removed for readability).

13      To succeed on his Title III, ADA claim, "a plaintiff must show that:

14  (1) he is disabled within the meaning of the ADA; (2) the defendant is a

15  private entity that owns, leases, or operates a place of public

16  accommodation; and (3) the plaintiff was denied public accommodations

17  by the defendant because of his disability." *Arizona ex rel. Goddard v.*

18  *Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

19  "The third element—whether plaintiffs were denied public

20  accommodations on the basis of disability—is met if there was a violation

21  of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816

22  F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing Chapman*, 631 F.3d at 945.

23  This is because discrimination is defined both as either a failure to ensure

24  that alterations are "readily accessible to and useable by persons with

25  disabilities" and, where there are no alterations, "a failure to remove

26  architectural barriers…in existing facilities…where such removal is

27  readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus,

28

Plaintiff's Motion for Summary Judgment                    Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities

the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);

2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;

3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;

4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);

5. Plaintiff must have actually encountered this non-removed and unlawful barrier. A personal encounter with one barrier at a site provides plaintiff with standing to seek injunctive relief for all barriers at the same site that are related to plaintiff's disability. 42 U.S.C. § 12188(a); *Doran v. 7-11*, 506 F.3d 1191, 1202 (9th Cir. 2007).

As discussed below, Plaintiff's civil rights were violated because the defendant failed to provide accessible facilities. Plaintiff will discuss each element, seriatim.

### A.      Plaintiff is Disabled

The plaintiff is quadriplegic. He cannot walk and has significant manual dexterity impairments. (SUF #1). He drives a specially equipped van with a lift that deploys from the passenger side of the van to accommodate his wheelchair. He has been issued a Disabled Person Placard by the California Department of Motor Vehicles. (SUF #2). There can be little doubt that he fits the qualification under the Americans with

Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability). Given plaintiff's inability to walk, this is not a genuine issue.

### B.    Defendants Own, Operate, Lease or Lease to a Place of Public Accommodation

The Fix Auto is a service establishment. Service establishments are expressly identified as places of public accommodation. 42 U.S.C. § 12181(7)(F) (SUF #5). Therefore, the Fix Auto is a place of public accommodation, which the Defendant admits. As outlined above, Defendant is, and was on the dates of incident, the real property owner and business operator of the Fix Auto. (SUF #4).   The Defendant, therefore, has an obligation to comply with the antidiscrimination provisions of Title III of the Americans with Disabilities Act.

### C.    The Fix Auto Had and Has Architectural Barriers to Access

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the

7

1   Court must turn to the ADA Accessibility Guidelines for Buildings and
2   Facilities ("ADAAG"). If an element does not meet or exceed ADAAG
3   standards, it is considered a barrier to access." *Rush v. Denco Enterprises,*
4   *Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted).
5   "Any element in a facility that does not meet or exceed the requirements
6   set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports*
7   *(U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the
8   formal position of the Department of Justice). These are "objective" and
9   "precise" standards and "the difference between compliance and
10  noncompliance" is "often a matter of inches." *Id.* In the present case, there
11  were barriers preventing Mr. Johnson from having equal access to the Fix
12  Auto's facilities on his visits in March, 2017, June 2017, July 2017,
13  August 2017 and September 2017.

14

15      **1.      Lack of Accessible Parking**

16          The lack of accessible parking constitutes a barrier. Under the 1991
    Standards, any business that provides parking spaces must provide
17  parking spaces marked as reserved for persons with disabilities. 1991
18  Standards § 4.1.2(5). One in every eight of those accessible parking
19  spaces, but not less than one, must be a "van" accessible parking space,
20  *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards §
21  4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible
22  parking spaces, but not less than one, must be "van" accessible, i.e. having
23  an eight foot access aisle, or alternatively, having a stall measuring 132
24  inches in width with a 60 inch adjacent access aisle. 2010 Standards §
25  502.2.[1]

26

27

28  [1] The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010
    Standards govern in this case, but not both simultaneously. However, both Standards

Plaintiff's Motion for Summary Judgment          Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities

1    Furthermore, to qualify as a reserved accessible parking space, the
2    space must be properly marked and designated. Under the ADA, the
3    method, color of marking, and length of the parking space are to be
4    addressed by State or local laws or regulations. See 36 C.F.R., Part 1191,
5    § 502.3.3.

6    Under the California Building Code, all accessible parking spaces
7    must be outlined in blue and display the international symbol of
8    accessibility. CBC 1129B4; 2010 Standards §§ 4.1.2(7)(a), 4.30.7.
9    Additionally, each such space must be identified with a reflectorized sign
10   permanently posted adjacent to and visible from each stall or space. CBC
11   § 1129B.4. The sign must consist of the International Symbol of
12   Accessibility (♿) in white on a blue background. *Id.* An additional sign or
13   additional language below the symbol of accessibility must state,
14   "Minimum Fine $250" to ensure that the space remains available for
15   persons with disabilities. *Id.* Another sign must be posted in a conspicuous
16   place at the entrance to the parking lot or immediately adjacent to each
17   handicap parking space, with lettering 1 inch in height, that clearly and
18   conspicuously warn that unauthorized vehicles parking in the handicap
19   parking spaces can be towed at the owner's expense. *Id.*  Van-accessible
20   spaces shall have an additional sign 'Van-Accessible' mounted below the
21   symbol of accessibility. Such signs shall be located so they cannot be
22   obscured by a vehicle parked in the space." 2010 Standards § 4.6.4.

23   Additionally, the words "NO PARKING" shall be painted on the
24   ground within each 8-foot… loading and unloading access aisle. This
25   notice shall be painted in white letters no less than 12 inches… high and
26
27   _____
28   are cited to demonstrate that it does not matter which Standard is applied because the
     parking did not comply with either Standard.

Plaintiff's Motion for Summary Judgment                    Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities

located so that it is visible to traffic enforcement officials." CBC § 11B-502.3.3.

There was no accessible parking space complying with these requirements during Mr. Johnson's multiple visits or during Mr. Louis's investigations. Although there was a sign on the wall that read "HANDICAPPED PARKING" indicating an accessible parking space, the parking space in front of that sign was not outlined with blue borders. Any paint that remained had faded beyond recognition. Additionally, the parking space did not have an adjacent access aisle with the required "NO PARKING" lettering and did not display the ISA, minimum fine or van accessible signage. (SUF #8-10, 17-20).

When Mr. Louis returned for a follow-up investigation in January 2018, he found that there was now a designated accessible parking space with blue borders and an access aisle. (SUF #30). However, the parking space of the designated accessible parking space measured only eight feet wide and the access aisle measured only five feet wide, which do not meet the requirements of a van accessible parking space which requires an eight foot access aisle. (SUF #33). Moreover, the access aisle lacked the 'NO PARKING' lettering. (SUF #31). The designated accessible parking was also still missing the ISA, minimum fine and van accessible signage. (SUF #32).

Defendant's failure to provide a van accessible parking space is a violation of the ADA.

### 2.    *Lack of Accessible Paths of Travel*

The lack of an accessible path of travel constitutes a barrier. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an

10

accessible route, there cannot be a stair or step. 1991 Standards § 4.3.8. Any such change in level measuring greater than ½ inch must have a ramp or lift. *Id.* 2010 Standards § 303.4.

During his investigation in October 2017, Mr. Louis found that the path of travel to the restroom entrance required a person to navigate steps for which there was no ramp. (SUF #22).

Defendant's failure to provide an accessible path of travel to the restroom is a violation of the ADA.

### 3.   Lack of Accessible Restrooms

The lack of an accessible restroom constitutes a barrier. Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4. During his investigation in October 2017, Mr. Louis found that the restroom door hardware was a traditional style round knob, which requires tight grasping and twisting of the wrist to operate. (SUF #24).

All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3. During his investigation in October 2017, Mr. Louis found that the restroom doorway was only 28 inches wide. (SUF #25).

Sinks must be mounted so that the counter or rim is no higher than 34 inches above the finish floor. 1991 Standards § 4.24.2; 2010 Standards § 606.3. During his investigation in October 2017, Mr. Louis found that the rim of the sink was 36 inches above the floor. (SUF #26).

Mirrors shall be mounted with the bottom edge of the reflecting

---

11

surface no higher than 40 inches above the finish floor. 1991 Standards §
4.19.6; 2010 Standards § 603.3. During his investigation in October 2017,
Mr. Louis found that the bottom edge of the mirror was 41 inches above
the floor. (SUF #27).

For a toilet to be considered accessible under the ADA, there must
be two grab bars on walls adjacent to the toilet to assist persons with
disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010
Standards § 604.5. During his investigation in October 2017, Mr. Louis
found that there were no grab bars located near the toilet. (SUF #28).

### D.   The Barriers Are Readily Achievable to Remove

Readily achievable is not in dispute in this case because Defendant
has admitted that they are not raising a readily achievable defense in this
case. (SUF #36). In any event, a cursory review of the Code of Federal
Regulations indicates that the types of action sought herein—i.e. installing
ramps, installing accessible door hardware, installing grab bars in toilet
stalls, installing offset hinges to widen doorways, installing a full-length
bathroom mirror and creating designated accessible parking spaces—are
the all identified as presumed to be readily achievable. See 28 C.F.R. §
36.304(b) (1), (3), (9), (11), (12), (16), (18).

In sum, the Defendants failed to remove barriers that were readily
removed and, therefore, violated the plaintiff's rights under the ADA.

### E.   The Plaintiff Personally Encountered These Violations and has been Deterred From Patronage

As established above, the Fix Auto was not accessible to Mr.
Johnson on the dates of his visits in March 2017, June 2017, July 2017,
August 2017 and September 2017, and it remains inaccessible today.

1   Thus, not only did Mr. Johnson personally encounter the violations, but

2   he faces the threat of continued and repeated violations.

3

4   **V.   THE LACK OF ACCESSIBLE FACILITIES IS UNLAWFUL**

5   **UNDER CALIFORNIA LAW**

6        The Unruh Civil Rights Act provides that "a violation of the right

7   of any individual under the Americans with Disabilities Act of 1990 shall

8   also constitute a violation of this section." Civ. Code § 51 (f).  "A violation

9   of the ADA is, by statutory definition, a violation of both the Unruh Act

10  and the DPA. *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal.

11  2012). "Because the Unruh Act is coextensive with the ADA and allows

12  for monetary damages, litigants in federal court in California often pair

13  state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731.

14  As discussed above under section "IV", the defendant violated the ADA.

15  Thus, there has been a per-se violation of Unruh.

16

17  **VI.   REMEDIES**

18       The Plaintiff seeks both injunctive relief and statutory damages.

19  Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. §

20  12188(a). Such injunctive relief "shall include an order to alter facilities

21  to make such facilities readily accessible to and useable by individuals

22  with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2).

23  "Allegations that a plaintiff has visited a public accommodation on a prior

24  occasion and is currently deterred from visiting that accommodation by

25  accessibility barriers establish that a plaintiff's injury is actual or

26  imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008).

27  "We have found actual or imminent injury sufficient to establish standing

28  where a plaintiff demonstrates an intent to return to the geographic area

13

1   where the accommodation is located and a desire to visit the
2   accommodation if it were made accessible." *D'Lil v. Best Western Encina*
3   *Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

4          Here,Mr. Johnson lives less than 10 miles away from the Fix Auto.
5   Therefore, the shop is conveniently located for him and he intends to
6   return there to seek repairs to his vehicle whenever the needed arises.
7   (SUF #34, 35).

8          Moreover, the Ninth Circuit has held that once a plaintiff
9   encounters one barrier at a site, he can sue to have all barriers that relate
10  to his disability removed regardless of whether he personally encountered
11  them. *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008). Here, photographs
12  and measurements taken by the Plaintiff's investigator on October 4,
13  2017, demonstrate that the path of travel to the restroom and several
14  features of the restroom are not compliant. (SUF #19-26 & 33). Although
15  Mr. Johnson did not personally encounter these barriers during his visits,
16  they would present an obstacle to Mr. Johnson's use of the Fix Auto when
17  he returns. Therefore, Mr. Johnson also has standing to seek remediation
18  of the restroom, as well as the path of travel to the restroom.

19         Statutory damages can be recovered for a violation of the Unruh
20  Civil Rights Act "if the violation denied the plaintiff full and equal access
21  to the place of public accommodation on a particular occasion." Cal. Civ.
22  § 55.56(a). A denial of full and equal access takes place where a plaintiff
23  "personally encountered" the violation and it resulted in "difficulty,
24  discomfort or embarrassment." Cal. Civ. § 55.56(b). Under the Civil Code,
25  the plaintiff is entitled to recover a statutory penalty for "each offense"
26  (Cal. Civ. Code § 52(a)) which has been defined as "each particular
27  occasion that the plaintiff was denied full and equal access . . ." Cal. Civ.
28  Code § 55.56(e). A plaintiff can recover for both actual encounters and

---

14

Plaintiff's Motion for Summary Judgment                    Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities

occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. § 55.56(b).

In the present case, all these elements are met. Mr. Johnson encountered the access standards violations during his visit in March 2017. He was subsequently deterred from patronizing the Fix Auto on June 2017, July 2017, August 2017 and September 2017 because of his knowledge of the violations. However, Mr. Johnson seeks only two statutory penalties—one for his March 2017 visit, and one for his multiple visits and deterrences thereafter. There are no genuine issues in dispute here and Mr. Johnson is entitled to the statutory award of $8,000 under the Unruh Civil Rights Act.[2] "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Mr. Johnson seeks an award of $8,000.

## VII.   CONCLUSION

There are no genuine issues of material fact in dispute. The plaintiff has presented facts and evidence that support all elements of his claim. As such, the Plaintiff respectfully requests this Court grant his motion and award him statutory damages of $8,000 and require the defendants to provide and maintain accessible parking, accessible paths of travel and accessible restroom at the Fix Auto.

---

[2] Please note that the election of $8,000 in damages is a concession made for the purposes of the instant Motion for Summary Judgment. Plaintiff is not bound by this election and, should the case proceed to trial and/or further settlement negotiations, Plaintiff reserves his right to seek a statutory penalty for all incidents of discrimination and acts of deterrence or, in the alternative, actual damages.

Plaintiff's Motion for Summary Judgment                     Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities

Dated: September 9, 2019          CENTER FOR DISABILITY ACCESS

By: */s/ Isabel Rose Masanque*
Isabel Rose Masanque
Attorneys for Plaintiff

Plaintiff's Motion for Summary Judgment          Case: 2:17-CV-02474-WBS-DB
Memorandum of Points and Authorities